IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MADELINE BUCKLEY, an Individual, TERRENCE JAMES, an Individual, STACEY WESTCOTT, an Individual, COLLEEN KUJAWA, an Individual, DEANESE WILLIAMS, an Individual, DARCEL ROCKETT, an Individual, and CHRISTY GUTOWSKI, an Individual, on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:24-cv-04027 |
| v. | ) ) | |
| CHICAGO TRIBUNE, LLC, an Illinois corporation, ALDEN GLOBAL CAPITAL, a Delaware corporation, TRIBUNE PUBLISHING COMPANY, a Delaware corporation, and DOES 1 through 100, | ) ) ) ) ) ) | |
| Defendants. | ) | |

**DEFENDANTS CHICAGO TRIBUNE, LLC AND TRIBUNE PUBLISHING
COMPANY'S BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS
AND TO STRIKE CLASS ALLEGATIONS**

**TABLE OF CONTENTS**

**Page**

FACTUAL BACKGROUND ............................................................................................ 2

      A.    Plaintiffs' general allegations ................................................ 2

      B.    Plaintiffs' specific positions with CT ....................................... 3

      C.    Plaintiffs' charges of discrimination ........................................ 5

      D.    Plaintiffs' causes of action in the Complaint ........................... 5

ARGUMENT ............................................................................................................ 6

    I.    The Court should dismiss CT from Counts 2 through 5, and Plaintiffs' class claims in those same counts, based on Plaintiffs' failure to exhaust administrative remedies. ................................................................. 6

      A.    Plaintiffs failed to exhaust their administrative remedies against CT. ......................................................................... 7

      B.    Plaintiffs failed to exhaust their class claims under Title VII and the IHRA. ...................................................................... 7

    II.    Plaintiffs' threadbare allegations that TPC is liable as a joint employer are deficient. ................................................................................... 8

    III.    The Court should dismiss Plaintiffs' EPA and IEPA claims under Rule 12(b)(6). .............................................................................. 10

    IV.    The Court should strike Plaintiffs' putative subclass of photographers as well as their putative class of "Covered Editor" positions. ............................... 13

      A.    Plaintiffs cannot establish numerosity for their putative subclass of photographers. ............................................................... 14

      B.    Plaintiffs have not alleged facts that support aggregating anyone who has a title of "editor" into a single class. ............................... 15

CONCLUSION ........................................................................................................ 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bluford v. Swift Transp.*,
  2012 WL 1755772 (N.D. Ill. May 16, 2012) ....................................................6, 7, 8

*Boyce v. SSP Am. MDW, LLC*,
  2019 WL 3554153 (N.D. Ill. July 31, 2019) .............................................................9

*Cheek v. W. & S. Life Ins. Co.*,
  31 F.3d 497 (7th Cir 1994) .................................................................................6, 7

*Cholly v. Uptain Grp.*,
  2015 WL 9315557 (N.D. Ill. Dec. 22, 2015) ..........................................................14

*Cullen v. Ind. Univ. Bd. of Trustees*,
  338 F.3d 693 (7th Cir. 2003) .................................................................................11

*Emerson v. Dart*,
  2024 WL 3544119 (7th Cir. July 26, 2024).........................................................2, 12

*Epstein v. Sec'y, U.S. Dep't of Treasury*,
  739 F.2d 274 (7th Cir. 1984) .................................................................................11

*Frasier v. Gen. Elec. Co.*,
  930 F.2d 1004 (2d Cir. 1991).................................................................................12

*Griffin v. Evanston/Skokie Cmty. Consol. Sch. Dist. No. 65*,
  2013 WL 6255225 (N.D. Ill. Dec. 3, 2013) ..............................................................5

*Hansen v. United Airlines, Inc.*,
  2021 WL 4552552 (N.D. Ill. Oct. 5, 2022)..............................................................13

*Henderson v. Allied Universal*,
  2018 WL 11508292 (N.D. Ga. Nov. 15, 2018) ........................................................11

*Henderson v. Burgan*,
  2018 WL 11508291 (N.D. Ga. Nov. 30, 2018) ........................................................11

*Hubers v. Gannett Co.*,
  2019 WL 1112259 (N.D. Ill. Mar. 11, 2019)...........................................................10

*Ivery v. RMH Franchise Corp.*,
  280 F. Supp. 3d 1121 (N.D. Ill. 2017) .....................................................................9

*Jafri v. Signal Funding LLC*,
2019 WL 4824883 (N.D. Ill. Oct. 1, 2019), *aff'd*, 2022 WL 17718429 (7th
Cir. Dec. 15, 2022)....................................................................................................7

*Lauderdale v. Ill. Dep't of Human Servs.*,
876 F.3d 904 (7th Cir. 2017) ...................................................................................11

*Marski v. Courier Express One, Inc.*,
2021 WL 4459512 (N.D. Ill. Sept. 29, 2021) ............................................................9

*Maschowicz v. Kaspersky Lab., Inc.*,
2014 WL 4683258 (N.D. Ill. Sept. 19, 2014) ..........................................................13

*Mays v. Dart*,
453 F. Supp. 3d 1074 (N.D. Ill. 2020) .....................................................................14

*Merillat v. Metal Spinners, Inc.*,
470 F.3d 685 (7th Cir. 2006) ...................................................................................11

*Michael v. Va. Dep't of Transp.*,
2022 WL 3569004 (E.D. Va. Aug. 18, 2022)................................................10, 11, 12

*Moldenhauer v. Tazewell-Pekin Consol. Commc'ns Ctr.*,
536 F.3d 640 (7th Cir. 2008) .....................................................................................8

*Retired Chi. Police Ass'n v. City of Chi.*,
7 F.3d 584 (7th Cir. 1994) .......................................................................................14

*Rose v. Goldman, Sachs & Co.*,
163 F. Supp. 2d 238 (S.D.N.Y. 2001).................................................................10, 12

*Rosenblum v. Travelbuys.com Ltd.*,
299 F.3d 657 (7th Cir. 2002) .....................................................................................5

*Rush v. McDonald's Corp.*,
966 F.2d 1104 (7th Cir. 1992) ................................................................................6, 7

*Savignac v. Jones Day*,
486 F. Supp. 3d 14 (D.D.C. 2020) ......................................................................12, 13

*Schnellbaecher v. Baskin Clothing Co.*,
887 F.2d 124 (7th Cir. 1989) .....................................................................................7

*Seo v. H Mart Inc.*,
2020 WL 5547913 (N.D. Ill. Sept. 16, 2020) .............................................................9

*Sorsby v. TruGreen Ltd. P'ship*,
2023 WL 130505 (N.D. Ill. Jan. 9, 2003) ...............................................................14

*Stephenson v. CNA Fin. Corp.*,
775 F. Supp. 238 (N.D. Ill. 1991) ...........................................................................7

*Strag v. Bd. of Trustees*,
55 F.3d 943 (4th Cir. 1995) ....................................................................................12

*Taylor v. Tex. S. Univ.*,
2019 WL 4394696 (S.D. Tex. Sept. 13, 2019) ..........................................10, 12, 13

*Vasich v. City of Chi.*,
2013 WL 80372 (N.D. Ill. Jan. 7, 2013) ...............................................................7, 8

**Statutes**

775 ILCS 5/7A-102 ........................................................................................................7

29 U.S.C. §§ 206(d) and 216(b) ....................................................................................5

Equal Pay Act ...........................................................................................................1, 11

Illinois Equal Pay Act .........................................................................1, 6, 10, 11, 13, 14

Illinois Human Rights Act ..............................................................................1, 6, 7, 8, 10

Title VII ..........................................................................................1, 5, 6, 7, 8, 10, 11

**Other Authorities**

Federal Rule of Civil Procedure 10 ...............................................................................5

Federal Rule of Civil Procedure 12(b)(6) ........................................................2, 5, 6, 10

Federal Rule of Civil Procedure 23 .........................................................................6, 13

Federal Rule of Civil Procedure 23(a) .........................................................................14

Federal Rule of Civil Procedure 23(b) .........................................................................14

Plaintiffs, seven female and/or African American employees of Defendant Chicago Tribune, LLC ("CT"), filed this putative class and collective action asserting claims for unequal pay against their employer, CT, as well as Alden Global Capital ("Alden") and Tribune Publishing Company ("TPC"). Plaintiffs' 51-page Complaint is replete with procedural and substantive flaws, which renders each of their claims deficient and subject to dismissal.

*First,* while Plaintiffs purport to bring individual and class claims under Title VII of the Civil Rights Act ("Title VII") and the Illinois Human Rights Act ("IHRA") against all three Defendants, they failed to satisfy their threshold burden to exhaust administrative remedies as to those claims in multiple ways. The administrative charges they filed neither were directed at their actual employer, CT (even though CT is named as a defendant in this action), nor alleged any putative class action claims. These deficiencies mandate dismissal of their Title VII and IHRA claims against CT and of their class claims under both statutes.

*Second,* in order to bring the claims alleged in the Complaint against TPC, Plaintiffs must establish the existence of an employer-employee relationship between them and TPC. The Complaint's threadbare assertions of "joint employer" liability against TPC are inadequately pled and TPC should therefore be dismissed as a defendant.

*Third,* Plaintiffs' claims of unequal pay under the federal Equal Pay Act ("EPA") and the Illinois Equal Pay Act ("IEPA") are substantively insufficient. Although Plaintiffs seek individual relief and to pursue collective and class action claims, *none of the Plaintiffs adequately identifies a single comparator* who allegedly is a male or non-African American employee (as applicable) and who supposedly is paid more for performing equal work under similar working conditions.

*Finally,* the Court should strike, in part, Plaintiffs' class action allegations. In particular, Plaintiffs cannot, as a matter of law, establish numerosity for their putative subclasses of

photographers (mis-labeled in the Complaint as "photojournalists"). Nor have Plaintiffs alleged facts that support aggregating, into a single class of "Covered Editors" the positions of Deputy Senior Content Editors, Opinion Content Editors and any other editors.

**FACTUAL BACKGROUND**[1]

**A.      Plaintiffs' general allegations**

The gravamen of Plaintiffs' claims is that they were paid less than their male and/or non-African-American counterparts for performing the same work. According to Plaintiffs, race and/or gender-based pay discrepancies occur because of a hodge-podge of different alleged policies and practices, claimed to be centralized, including: (1) Defendants' purported "culture of secrecy" surrounding pay and salaries; (Complaint ("Compl.") ¶ 9); (2) Defendants' reliance on "diversity recruitment programs" "to recruit talented, mostly women and minority, journalists into temporary year-long positions" (*id.* ¶ 10); (3) reliance on salary history (*id.* ¶ 11); and (4) hiring women and African American employees from suburban newspapers (*id.*).

Plaintiffs aver that "diversity outreach programs" result in disparate pay because, if CT offers an individual who participates in such programs a full-time job after the program ends, their salary during the program acted as an "anchor" in setting their subsequent salary. *Id.* ¶¶ 10, 16. The Complaint identifies two diversity outreach programs that were discontinued in or around July 2020: the "MetPro" program, and the "Residency" program, which is described as a two-year program with a potential for full-time employment thereafter. *Id.* ¶ 51. Plaintiffs also claim that hiring women and African Americans from suburban newspapers causes pay disparity because such suburban newspapers "pay much lower salaries than major newspapers," and that CT therefore offers such individuals lower salaries than "white employees" they recruit from "other

---

[1]  The allegations drawn from the Complaint are to be taken as true only for purposes of assessing the Rule 12(b)(6) motion to dismiss. *Emerson v. Dart*, 2024 WL 3544119, at *2 (7th Cir. July 26, 2024).

major news organizations" who are "offered higher salaries as a means to induce them to accept employment." *Id.* ¶ 11.

**B.     Plaintiffs' specific positions with CT**

Plaintiff Madeline Buckley is a white female Senior Reporter who joined CT in 2017 as part of its "Residency" program, and then worked on other beats. *Id.* ¶¶ 23, 55-58. She alleges that, "[b]ased on her own investigation and discussions with others," she has been "paid significantly less than her male peers for substantially equal or similar work performed under similar working conditions when viewed as a composite of skill, effort, and responsibility." *Id.* ¶ 61.

Plaintiff Terrence James is an African American male who has worked for CT as a photojournalist since 1998. *Id.* ¶¶ 3, 62. He is the only African American photojournalist, and alleges that "[t]here has only been a handful of African American photojournalists hired by the newspaper since 1998." *Id.* ¶ 64. James alleges that based on his discussions with others, he "learned he was paid less than non-African American employees for substantially equal or similar work performed under similar working conditions, when viewed as a composite of skill, effort, and responsibility." *Id.* ¶ 65. James asserts that "a number of non-African American photojournalists with less experience and industry recognition are making substantially more money than" him "despite performing substantially similar work." *Id.*

Plaintiff Darcel Rockett is an African American female who works for CT as a Senior Reporter. *Id.* ¶ 96. She joined CT in 2008, and alleges that she is "one of a very few African American Tribune journalists." *Id.* ¶¶ 98-100. She claims she "learned through her own investigation and discussions with others that she was paid less than non-African American and/or male employees for substantially equal or similar work performed under similar working conditions, when viewed as a composite of skill, effort, and responsibility." *Id.* ¶ 101.

Neither James nor Rockett allege in the Complaint: (1) that they were hired from a

3

suburban paper or a residency; (2) how a "culture of pay secrecy" or reliance on salary history impacted their pay; or (3) that any of the challenged practices are responsible for their salary.. In fact, the Complaint concedes that James and Rockett purportedly know how much other unidentified photojournalists and reporters, respectively, are paid. *Id.* ¶¶ 65, 101.

Plaintiff Stacey Wescott is a white female photojournalist who began in the Residency program. *Id.* ¶¶ 66-67. Wescott states that she works "[i]n a newsroom with few female photographers," and that she "is being paid significantly less than her male peers for substantially equal or similar work performed under similar working conditions when viewed as a composite of skill, effort, and responsibility." *Id.* ¶¶ 73, 78.

Plaintiff Colleen Kujawa is a female Opinion Content Editor who joined CT in June 2012. *Id.* ¶¶ 79-80. She alleges that her prior salary at "a local suburban newspaper in neighboring northwest Indiana" was depressed. *Id.* ¶ 81. She alleges that "a number of male editors with less experience and industry recognition are making substantially more money" than her "despite performing substantially similar work." *Id.* ¶ 86.

Plaintiff Deanese Williams is an African-American female who works as a Deputy Senior Content Editor. *Id.* ¶ 87. CT hired her in 2007 via the "MetPro" Residency program and offered her a job in 2009 after it ended. *Id.* ¶¶ 88-89. She avers that "she was paid less than non-African American and/or male employees for substantially equal or similar work performed under similar working conditions, when viewed as a composite of skill, effort, and responsibility." *Id.* ¶ 95.

Plaintiff Christy Gutowski is a Senior Reporter who joined CT in 2010. *Id.* ¶¶ 102. She alleges that her work on CT's Suburban Watchdog Team anchored her salary, and that she "is paid less than males who perform substantially equal or similar work under similar working conditions when viewed as a composite of skill, effort, and responsibility." *Id.* ¶¶ 103-104, 112.

### C. Plaintiffs' charges of discrimination

Plaintiffs allege that they cross-filed charges with the Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights ("IDHR") on April 16, 2024. *Id.* ¶ 22; *see* Exhibit ("Ex.") 1, Declaration of Jean Nechvatal, ¶ 6 and Exs. A-G.[2] None of the charges were brought against CT (or Alden). Each charge identified each Plaintiff as a "Claimant," named TPC as the lone "Respondent," and followed the same format: several allegations specific to each individual (*e.g., id.*, Ex. C (James), at ¶¶ 1-4), followed by six paragraphs identical in each charge under the heading "Facts Common to All Claimants." *E.g., id.*, Ex. C, at ¶¶ 5-10. In the latter section, each charge stated that CT "maintains a systemic and company-wide pay gap, wherein women and African-American employees are compensated significantly less than their male and non-African American colleagues." *E.g.*, *id.*, Ex. C at ¶ 5. Each charge also stated that the "policies and practices" included using diversity outreach programs and recruiting journalists from suburban newspapers to pay them "depressed salaries." *E.g.*, *id.*, Ex. C at ¶¶ 6-8.

### D. Plaintiffs' causes of action in the Complaint

In Count 1, Plaintiffs allege an EPA claim for unequal pay on the basis of sex. Compl. ¶¶ 113-122. They also bring this claim as a putative collective action under 29 U.S.C. §§ 206(d) and 216(b) on behalf of classes of reporters, editors, and photojournalists. *Id.* ¶ 47. In Count 2, Plaintiffs allege sex discrimination under Title VII on behalf of themselves and a putative class of all non-managerial female employees who worked for Defendants 300 calendar days before May 15, 2024, the date this action was filed. *Id.* ¶¶ 38(a), 123-133. In Count 3, Plaintiffs allege race

---

[2]  The Complaint incorrectly asserts (¶ 22) that the Charges were filed on May 15, 2024. Pursuant to Federal Rule of Civil Procedure 10, the Court may consider documents attached to a Rule 12(b)(6) motion to dismiss if the documents are referenced in the complaint and central to the claims. *Rosenblum v. Travelbuys.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002). Further, the court may consider documents that are subject to judicial notice in resolving a Rule 12(b)(6) motion. *Griffin v. Evanston/Skokie Cmty. Consol. Sch. Dist. No. 65*, 2013 WL 6255225, at *2 (N.D. Ill. Dec. 3, 2013). An EEOC charge meets all of these criteria. *Id.*

discrimination under Title VII on behalf of themselves and a putative class of all non-managerial African-American employees who worked for Defendants 300 days before May 15, 2024. *Id.* ¶¶ 38(b), 134-144. In Count 4, Plaintiffs allege sex discrimination under the IHRA on behalf of themselves and the same putative class as in Count 2. *Id.* ¶¶ 145-155. In Count 5, Plaintiffs allege race discrimination under the IHRA on behalf of themselves and the same putative class as in Count 3. *Id.* ¶¶ 156-166. In Count 6, Plaintiffs allege a race-based pay disparity claim under the IEPA on behalf of themselves and putative classes of African American reporters, editors, and photojournalists. *Id.* ¶¶ 167-178. In Count 7, Plaintiffs allege a sex-based pay disparity claim under the IEPA on behalf of themselves and putative subclasses of female reporters, editors, and photojournalists. *Id.* ¶¶ 179-190.

## ARGUMENT

**I.**   **The Court should dismiss CT from Counts 2 through 5, and Plaintiffs' class claims in those same counts, based on Plaintiffs' failure to exhaust administrative remedies.**

In order to maintain an employment discrimination claim, a plaintiff must first exhaust their administrative remedies by filing a charge of discrimination with the EEOC or the IDHR. *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992). The scope of any subsequent proceedings is limited by the nature of the charges filed. *Id.* "A Title VII plaintiff can only bring those claims in his complaint in federal court that were included in his original EEOC charge."[3] *Bluford v. Swift Transp.*, 2012 WL 1755772, at *2 (N.D. Ill. May 16, 2012) (citing *McKenzie v. Ill. Dep't of Transp.*, 92 F.3d 473, 481 (7th Cir. 1996)). In addition, a complaint filed after administrative exhaustion must be limited to discrimination "like or reasonably related to the allegations of the charge and growing out of such allegations." *Id.* This rule "gives the employer

---

[3] Because exhaustion is a condition precedent to stating a claim under Title VII and the IHRA, the Court may consider this argument under Rule 12(b)(6) rather than Rule 23, if it chooses. *See Cheek v. W. & S. Life Ins. Co*., 31 F.3d 497, 500 (7th Cir 1994).

some warning of the conduct about which the employee is aggrieved, and it affords the agency and the employer an opportunity to attempt conciliation without resort to the courts." *Rush*, 966 F.2d at 1110. *See also Cheek*, 31 F.3d at 500.

### A.   Plaintiffs failed to exhaust their administrative remedies against CT.

Plaintiffs did not name CT as a respondent in the charges they cross-filed with the EEOC and IDHR. Each Plaintiff's charge named TPC as the lone "Respondent", Ex. 1, ¶¶ 6-8, Exs. A-G. As a result, the IDHR sent notice of the charges solely to TPC (and not to CT). *Id.* "Ordinarily, a party not named in an EEOC Charge may not be sued under Title VII." *Stephenson v. CNA Fin. Corp.*, 775 F. Supp. 238, 239 (N.D. Ill. 1991). Thus, the Title VII claims against CT should be dismissed. The same is true as to Plaintiffs' IHRA claims. *See Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 127 (7th Cir. 1989); 775 ILCS 5/7A-102. Accordingly, CT should be dismissed from Counts 2 through 5. *See Schnellbaecher*, 887 F.2d at 127; *Jafri v. Signal Funding LLC*, 2019 WL 4824883, at *3 (N.D. Ill. Oct. 1, 2019), *aff'd*, 2022 WL 17718429 (7th Cir. Dec. 15, 2022).[4]

### B.   Plaintiffs failed to exhaust their class claims under Title VII and the IHRA.

Plaintiffs' EEOC charges asserted individual claims of discrimination and did not set forth class claims. The exhaustion rule requires the Plaintiff to adequately raise class claims in the EEOC charge. *Schnellbaecher*, 887 F.2d at 127; *Bluford*, 2012 WL 1755772, at *6. When the focus of the administrative charge is on an individual claim, that charge does not adequately exhaust and preserve class claims. *Vasich v. City of Chi.*, 2013 WL 80372, at *2 (N.D. Ill. Jan. 7, 2013); *see also Bluford*, 2012 WL 1755772, at *6. Here, Plaintiffs' charges were all focused specifically on

---

[4] While Plaintiffs listed CT in the allegations of their charges and collectively referred to the entities as "Respondents" in their narratives with respect to certain allegations, (Ex. 1, ¶ 6, Exs. A-G), TPC was the lone "Respondent" in the charge itself, and only TPC received notice from the agencies of the charges. Ex. 1, ¶¶ 6-8. *See Schnellbaecher*, 887 F.2d at 127 (affirming dismissal of defendant which was not subject of administrative charge and therefore had no opportunity to conciliate on its own behalf).

the discrimination each individual Claimant allegedly experienced. Ex. 1, ¶ 6, Exs. A-G. For instance, Plaintiff James set forth his work history and alleged that he, specifically, was the subject of discrimination. *Id.*, Ex. C, ¶¶ 1-4. Plaintiff Gutowski also set forth detailed allegations about her individual work history to support her discrimination claim. *Id.*, Ex. B, ¶¶ 1-11. So did the other five Plaintiffs. *Id.*, Ex. A, ¶¶ 1-7; Ex. D, ¶¶ 1-8; Ex. E, ¶¶ 1-6; Ex, F, ¶¶ 1-13; Ex. G, ¶¶ 1-9. The focus of these charges on individual and not class-wide allegations did not adequately provide notice to Defendants that Plaintiffs were attempting to exhaust class-wide claims. *See Vasich*, 2013 WL 80372, at *2; *Bluford*, 2012 WL 1755772, at *6.

While each of the seven Plaintiffs included six identical paragraphs in their charges under the heading "Facts Common to All Claimants", those paragraphs did not suggest Plaintiffs were seeking class-based relief. Ex. 1, ¶ 6, Exs. A-G. Rather, the reference to all "All Claimants" plainly refers to the seven Plaintiffs, referred to as "Claimants" in their charges, who filed Title VII and IHRA charges regarding their pay on the same day against the same respondent. In other words, the class claims alleged in the Complaint were not "reasonably expected to grow out of an EEOC investigation of the allegations in the charge" because the "All Claimants" allegations were meant to explain the reasons for the individual circumstances of discrimination set forth in the seven individual charges filed at the same time. *Bluford*, 2012 WL 17555772, at *5. Plaintiffs' Title VII and IHRA class claims in Counts 2 through 5 should therefore be dismissed.

## II.    Plaintiffs' threadbare allegations that TPC is liable as a joint employer are deficient.

Plaintiffs summarily contend in Paragraph 34 of the Complaint that TPC is jointly liable for their claims under a joint employer theory. Nothing in the rest of the Complaint supports those threadbare allegations, and indeed much refutes it. "For a joint-employer relationship to exist, each alleged employer must exercise control over the working conditions of the employee[.]" *Moldenhauer v. Tazewell-Pekin Consol. Commc'ns Ctr.*, 536 F.3d 640, 644 (7th Cir. 2008). "To

determine whether a purported employer exercises such control, courts consider factors such as whether the entity supervises a plaintiff's day-to-day activities; sets the plaintiff's compensation or working hours; directs the plaintiff while on the job; disciplines the plaintiff; or has any role in hiring, firing, promoting, or demoting the plaintiff." *Marski v. Courier Express One, Inc.*, 2021 WL 4459512, at *5 (N.D. Ill. Sept. 29, 2021) (collecting cases). "Vague and undifferentiated allegations are not sufficient to establish a joint-employer relationship" at the pleadings stage. *Boyce v. SSP Am. MDW, LLC*, 2019 WL 3554153, at *4 (N.D. Ill. July 31, 2019) (granting motion to dismiss because plaintiff failed to plead that alleged joint employer had the power to hire and fire employees, supervised and controlled employee work schedules or conditions of payments, determined the rate and method of payment, and maintained employment records).

Here, Plaintiffs allege only that TPC "had *the authority* to set bonuses, raises and compensation for [CT] employees" and "was ultimately in charge of the centralized group overseeing [CT] operations and compensation decisions." *Id.* ¶ 34 (italics added). These are conclusions, not facts, and they do not establish the existence of an employment relationship. Indeed, Plaintiffs do not even allege the deficient facts asserted in *Boyce*, much less the indicia necessary to show that TPC actually exercised control over their daily activities and working conditions, such as whether TPC had any role supervising Plaintiffs, gave them work assignments, had the power to hire or fire them, or had the authority to discipline them or actually set employee compensation. Nor does the Complaint allege any wrongful actions by TPC. Thus, TPC should be dismissed. *Marski*, 2021 WL 4459512, at *5; *Seo v. H Mart Inc.*, 2020 WL 5547913, at *5 (N.D. Ill. Sept. 16, 2020); *Ivery v. RMH Franchise Corp.*, 280 F. Supp. 3d 1121, 1131 (N.D. Ill. 2017) (granting motion to dismiss because "[t]here are no allegations that [joint employer] set [plaintiff's] work schedule, directly supervised her day-to-day work . . . or issued her payroll

checks. These are the types of allegations that allow courts to draw reasonable inferences that an entity 'controls' working conditions.").

Plaintiffs' joint employer theory fails for another reason. Plaintiffs allege that TPC "*was a joint employer of Plaintiffs and putative class [members] during the time it owned* [CT]." Compl. ¶ 34 (italics added). But Plaintiffs concede that Alden acquired TPC in 2021. *Id.* ¶ 31. That acquisition long precedes the applicable statute of limitations for several of Plaintiffs' claims in this case, namely the 300-day period for their putative sex and race class claims under Title VII and the IHRA. *Id.* ¶ 38. TPC thus cannot be a "joint employer" as to the claims in Counts 2 through 5 because, by Plaintiffs' own allegations, TPC was not a joint employer following the acquisition.

## III. The Court should dismiss Plaintiffs' EPA and IEPA claims under Rule 12(b)(6).

Under the pleading standard for EPA claims, "bald assertions" that the plaintiff and another employee "received disparate wages for substantially equal jobs under similar working conditions" fail to state a claim. *Rose v. Goldman, Sachs & Co.*, 163 F. Supp. 2d 238, 244 (S.D.N.Y. 2001). Similarly, "very general and generic allegations" about job titles and duties "provide no basis to compare the skill, effort, and responsibility" required of the employees' respective positions nor do they "support an inference" that the employees were similarly situated in the relevant aspects of their work. *Taylor v. Tex. S. Univ.*, 2019 WL 4394696, at *3 (S.D. Tex. Sept. 13, 2019). Thus, simply stating that other employees make more without providing detail about their job duties is insufficient to state an EPA claim. *Michael v. Va. Dep't of Transp.*, 2022 WL 3569004, at *10 (E.D. Va. Aug. 18, 2022). And claims brought under the EPA and IEPA "are evaluated using the same standards." *Hubers v. Gannett Co.*, 2019 WL 1112259, at *4 n.8 (N.D. Ill. Mar. 11, 2019).

Under both statutes, an employee raises a *prima facie* case of pay discrimination by demonstrating a "difference in pay for 'equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'"

10

*Lauderdale v. Ill. Dep't of Human Servs.*, 876 F.3d 904, 907 (7th Cir. 2017) (citation omitted). "In determining whether two jobs are equal, the critical inquiry is 'whether the jobs to be compared have a 'common core' of tasks, *i.e.*, whether a significant portion of the two jobs is identical.'" *Cullen v. Ind. Univ. Bd. of Trustees*, 338 F.3d 693, 698 (7th Cir. 2003). This determination is based on the actual job duties, and not the job descriptions or titles. *Merillat v. Metal Spinners, Inc.*, 470 F.3d 685, 695 (7th Cir. 2006). "While the work performed . . . need not be identical, it must be 'substantially equal.'" *Epstein v. Sec'y, U.S. Dep't of Treasury*, 739 F.2d 274, 277 (7th Cir. 1984). This imposes a high bar on Plaintiffs because "[w]hen Congress enacted the Equal Pay Act, it substituted the word 'equal' for 'comparable' to show that the jobs involved must be virtually identical, that is, they would be very much alike or closely related to each other" such that they are "substantially identical." *Henderson v. Allied Universal*, 2018 WL 11508292, at \*7 (N.D. Ga. Nov. 15, 2018) (cleaned up), *report and rec. adopted sub nom.*, *Henderson v. Burgan*, 2018 WL 11508291 (N.D. Ga. Nov. 30, 2018). *See also Michael*, 2022 WL 3569004, at \*10 (EPA requires "stricter" showing of similarity than under Title VII).

Here, Plaintiffs fail to state a cause of action under the EPA and IEPA because they have not adequately alleged that any Plaintiff received less pay than a comparable employee outside of the protected class performing the same job. Instead, the allegations show that each Plaintiff's experience is highly individualized, and none of the Plaintiffs points to any specific individual, or identifiable individuals, outside the protected class(es) who were paid more for equal work.

For example, Plaintiff Buckley offers nothing more than the threadbare recitation of the legal elements of the cause of action, pleading only that "she was paid significantly less than her male peers for substantially equal or similar work performed under similar working conditions when viewed as a composite of skill, effort, and responsibility." Compl. ¶ 61. These allegations

are too vague and generic to state an EPA claim. *Emerson v. Dart*, __ F.4th __, 2024 WL 3544119, at *2 (7th Cir. July 26, 2024) (threadbare recitals of legal elements of claim do not satisfy *Twombly/Iqbal* standard); *Taylor*, 2019 WL 4394696, at *3 (generic and general allegations about job duties do not state an EPA claim).

Plaintiff James repeats the same threadbare recitals, further stating only that "a number of non-African American photojournalists with less experience and industry recognition" earn more than him "despite performing substantially similar work." Compl. ¶ 65. Such vague allegations do not offer factual detail to permit a meaningful comparison of the work actually performed by James and the nameless other employees who he intends to claim performed the same job, including the quality, skill, effort, and responsibility involved. *See Frasier v. Gen. Elec. Co.*, 930 F.2d 1004, 1007-08 (2d Cir. 1991) (conclusory allegations did not state EPA claim). James's allegations are "nothing more than bald assertions that" he and other employees "received disparate wages for substantially equal jobs under similar working conditions." *Rose*, 163 F. Supp. 2d at 244.

Along these same lines, Plaintiff Wescott has not alleged factual detail to enable a conclusion that a particular male colleague had similar job responsibilities so that the Court could "infer that these individuals held similar roles." *Michael*, 2022 WL 3569004, at *10. And beyond having similar responsibilities, Wescott has not alleged facts that she "actually performed work 'substantially equal' to the work performed by her male comparators during the relevant period." *Savignac v. Jones Day*, 486 F. Supp. 3d 14, 31-32 (D.D.C. 2020). Instead, after detailing her own work history, Wescott alleges only that her male peers were paid more "for substantially equal or similar work performed under similar working conditions when viewed as a composite of skill, effort, and responsibility." Compl. ¶ 78. Such references to "a hypothetical or 'composite' male" are insufficient. *Strag v. Bd. of Trustees*, 55 F.3d 943, 948 (4th Cir. 1995).

The same holds true for Plaintiff Kujawa, who alleges only that she was paid less than "male employees" without any detail about the job responsibilities of particular employees to whom she compares herself or about the work they actually performed. Compl. ¶ 86. Her vague statement that "a number of male editors with less experience and industry recognition" are making more money than her is the type of speculative and composite pleading that courts have rejected in EPA claims. *See, e.g.*, *Savignac*, 486 F. Supp. 3d at 31-32; *Taylor*, 2019 WL 4394696, at *3.

Plaintiff Williams offers even less. Although she states that she "is the second lowest paid deputy senior content editor," Compl. ¶ 94, her pleadings are completely silent about the actual work performed by other male and/or non-African American senior content editors. Plaintiff Rockett similarly provides no allegations about the responsibilities or the work actually performed by her male and/or non-African American peers. *Id.* ¶ 101. Last, Plaintiff Gutowski generically alleges that "[m]ale journalists with substantially similar job duties and significantly less experience (both industry experience and at [CT]) than Gutowski are paid more," (*id.* ¶ 111), but she provides no factual detail about the actual responsibilities or work performed by any non-hypothetical or composite employees.

Although all seven Plaintiffs detail their own work histories, none of them provides any detail about their alleged comparators. The higher bar for pleading an EPA claim is therefore not satisfied. Plaintiffs' claims under the EPA and IEPA in Counts 1, 6 and 7 should be dismissed.

## IV. The Court should strike Plaintiffs' putative subclass of photographers as well as their putative class of "Covered Editor" positions.

"Courts in this District evaluate motions to strike class allegations under Rule 23[.]" *Hansen v. United Airlines, Inc.*, 2021 WL 4552552, at *5 (N.D. Ill. Oct. 5, 2022). Under Rule 23, "a court may determine that class certification is inappropriate even before the parties proceed to discovery." *Maschowicz v. Kaspersky Lab., Inc.*, 2014 WL 4683258, at *3 (N.D. Ill. Sept. 19,

2014) (citing *Bohn v. Boiron, Inc.*, 2013 WL 3975126, at *5 (N.D. Ill. Aug. 1, 2013)). Thus, a court may "strike class allegations at the pleading stage" when the allegations are factually deficient and discovery is not needed to resolve a factual dispute. *Cholly v. Uptain Grp.*, 2015 WL 9315557, at *3 (N.D. Ill. Dec. 22, 2015). Under Rule 23(a), the plaintiff must meet the requirements of numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a); *see also Sorsby v. TruGreen Ltd. P'ship*, 2023 WL 130505, at *3 (N.D. Ill. Jan. 9, 2003). Additionally, the plaintiff must satisfy the requirements of Rule 23(b), including showing predominance when, as here, class damages are sought. Fed. R. Civ. P. 23(b); *Sorsby*, 2023 WL 130505, at *3.

### A. Plaintiffs cannot establish numerosity for their putative subclass of photographers.

Plaintiffs define separate IEPA subclasses for all female employees who worked as (1) reporters; (2) editors; and (3) photojournalists, and for all non-African American employees who worked as (1) reporters; (2) editors; and (3) photojournalists during the class period. Compl. ¶¶ 39-40. "Subclasses must satisfy the class action requirements before they may be certified." *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 599 (7th Cir. 1994). While there is no "magic number" sufficient to meet the numerosity perquisite, "forty is generally accepted as sufficient to satisfy Rule 23(a)." *Mays v. Dart*, 453 F. Supp. 3d 1074, 1086 (N.D. Ill. 2020) (citing *Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 859 (7th Cir 2017)).

Plaintiffs' allegations themselves indicate that their IEPA subclass of photographers does not meet the numerosity requirement. For instance, James alleges that he is the only African American photographer at CT, and that only a handful of African American photographers have been hired by the newspaper since 1998. Compl. ¶ 64. As Nechvatal's declaration makes clear, only 12 photographers have been employed by CT in the five-year period preceding the filing of this case, which is the maximum statute of limitations under the IEPA. Ex. 1, ¶ 5. Therefore, the

proposed subclasses of photographers in paragraphs 39.e. and 40.h of the Complaint fail the numerosity requirement as a matter of law and should be stricken.

**B.     Plaintiffs have not alleged facts that support aggregating anyone who has a title of "editor" into a single class.**

The only Plaintiffs with a title of "editor" are Williams (a Deputy Senior Content Editor) and Kujawa (an Opinion Content Editor). But Plaintiffs do not assert that these two individuals, with different job titles, perform the same or even substantially the same duties, much less that their roles should be aggregated into a single class with anyone else who happens to work in any editorial capacity—regardless of title—in "news, features, opinion, photo, sports, and audience work groups." Indeed, Plaintiffs make no effort to define the scope of "Covered Editors" in paragraph 6(2) of the Complaint. Nor do the actual allegations support such a class. Plaintiffs allege Kujawa works on letters to the editor and op-eds, and "is one of the people responsible for the topicality and overall balance" of content in the opinion section. Compl. ¶ 83. As for Williams, the Complaint is devoid of any description of her duties as Deputy Senior Content Editor, except that she "was awarded increased responsibility and job duties" when she was promoted to that role in 2023. *Id.* ¶ 94. Such opacity does not justify lumping together differently-titled positions.

## CONCLUSION

For the foregoing reasons, this Court should: (1) dismiss CT from Counts 2 through 5, and the corresponding class allegations, for failure to exhaust administrative remedies; (2) dismiss TPC because it is not a joint employer; (3) dismiss Plaintiffs' claims under the EPA and IEPA for failure to state a claim; and (4) strike Plaintiffs' IEPA subclass of photographers and class of "editors."

Respectfully submitted,

MAYER BROWN LLP

By: _/s/ Andrew S. Rosenman_
Andrew S. Rosenman

Marcia E. Goodman
Kyla Miller
71 South Wacker Drive
Chicago, IL 60606
Telephone:  (312) 782-0600
arosenman@mayerbrown.com
mgoodman@mayerbrown.com
kmiller@mayerbrown.com

and

MAYER BROWN LLP
Ruth Zadikany (pro hac vice forthcoming)
333 South Grand Ave., 47th Floor
Los Angeles, CA 90071
Telephone:  (213) 229-9500
rzadikany@mayerbrown.com

16

770353764.7