**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MADELINE BUCKLEY, TERRENCE JAMES, STACEY WESCOTT, COLLEEN KUJAWA, DEANESE WILLIAMS, DARCEL ROCKETT, and CHRISTY GUTOWSKI, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> CHICAGO TRIBUNE, LLC; ALDEN GLOBAL CAPITAL; TRIBUNE PUBLISHING COMPANY; AND DOES 1 THROUGH 100, <br><br> Defendants. | No. 24-cv-04027 <br><br> Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Female and African American journalists at the Chicago Tribune bring this pay discrimination suit on behalf of themselves and several putative classes. Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6) and to strike certain class allegations. *See* R. 20, 22. For the following reasons, the motions to dismiss are granted in part and denied in part, and the motion to strike is denied.

**Background[1]**

The seven Plaintiffs are female and African American journalists at the Chicago Tribune. R. 1 ("Compl.") ¶¶ 23–29. They bring this suit on behalf of

---

[1] The Court draws the facts included in this section from the well-pled allegations in the complaint, which it accepts as true at this stage. *See, e.g., Anicich v. Home Depot U.S.A., Inc.*, 852 F.3d 643, 648 (7th Cir. 2017).

themselves and several putative classes of journalists against Chicago Tribune, LLC (the "Tribune"), the Tribune Publishing Company ("TPC"), and Alden Global Capital ("Alden") (together "Defendants") along with Does 1 through 100. TPC owned and operated the Tribune until Alden acquired TPC in 2021. *Id.* ¶¶ 31, 32, 34.[2] Plaintiffs claim that they, along with other female and African American employees, have been and continue to be paid less than their male and white counterparts who perform "equal or similar work on jobs that require similar or equal skill, effort and responsibility, under similar working conditions." *Id.* ¶¶ 2, 13, 14.

Plaintiffs trace these allegedly discriminatory pay disparities to several policies and practices. First, Defendants used diversity outreach programs like MetPro and the Residency program to hire female and minority journalists. MetPro hires and Residents were paid less than their full-time colleagues. *Id.* ¶¶ 10, 11, 16, 51, 127. Additionally, Resident positions were temporary. If and when Residents were offered full-time roles at the expiration of their terms, their offers were anchored to a lower starting salary than their colleagues who were not hired through the program. *Id.* ¶ 51. Although the programs were discontinued in July 2020, the wage gaps they caused remain. *Id.*

Further, while Defendants recruit male and/or white employees from major news publications, they recruit mostly female and African American journalists from

---

[2] Plaintiffs' counsel asserts that TPC continues to operate the Tribune in the declaration attached to Plaintiffs' opposition to the motions to dismiss. *See* R. 30-1 ("Decl.") ¶¶ 40, 41. The Court discusses its consideration of this declaration in the section that follows.

community and local suburban newspapers, which pay less than major publications. *Id.* ¶ 52. Defendants offer competitive salaries to male and/or white candidates from major publications to induce acceptance, while taking advantage of the lower salaries earned by female and African American candidates at local newspapers to offer them lower starting salaries. *Id.* Defendants perpetuate the pay disparities by relying on salary history to determine pay and by prohibiting employees from discussing their salaries with each other, thereby fostering a culture of secrecy around compensation. *Id.* ¶¶ 11, 16, 53, 54.

Plaintiffs bring claims of sex and race discrimination in violation of Title VII of the Civil Rights Act of 1964 and the Illinois Human Rights Act ("IHRA") and sex- and race-based pay disparities in violation of the federal Equal Pay Act ("EPA") and the Illinois Equal Pay Act of 2003 ("IEPA"). Plaintiffs bring their Title VII and IHRA claims on behalf of putative sex and race classes and their sex- and race-based IEPA claims on behalf of putative classes of reporters, editors, and photojournalists.

Defendants move to dismiss on several grounds. They argue that Plaintiffs: have not exhausted their administrative remedies as to the class claims and all claims against Alden; have not adequately alleged that TPC and Alden were employers as required by the relevant statutes; and have not plausibly alleged violations of the EPA and IEPA. Defendants also seek to strike certain class allegations.

## Legal Standard

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.

R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "Facial plausibility exists 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 523 (7th Cir. 2023) (quoting *Iqbal*, 556 U.S. at 678). In applying these standards, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *See Hernandez v. Ill. Inst. of Tech.*, 63 F.4th 661, 666 (7th Cir. 2023).

## Discussion

### I.   Plaintiffs' Declaration and Exhibits

At the outset, in opposing the motion to dismiss, Plaintiffs' counsel filed a declaration setting forth additional facts that could be alleged in an amended complaint, along with approximately 1,100 pages of IDHR charges, EEOC charges, and dismissals. *See generally* Decl. Defendants argue that this declaration is improper, criticize Plaintiffs' counsel for submitting these materials in lieu of amending the complaint, and contend that consideration of these materials is inefficient.

Although it is well established that a "complaint may not be amended by the briefs in opposition to a motion to dismiss," *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012), the Court may consider "information that is subject to proper judicial notice" along with additional facts set forth in a brief opposing dismissal "so long as those facts are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013); *see also Heng v. Heavner, Beyers & Mihlar, LLC*, 849 F.3d 348, 354 (7th Cir. 2017) ("Materials or elaborations in appellants' brief opposing dismissal may be considered, so long as those materials or elaborations are consistent with the pleadings."). As public records, the Court may take judicial notice of the EEOC and IDHR materials. *See, e.g.*, *Goodlet v. City of Chicago*, No. 22 C 570, 2024 WL 3105883, at *3 n.2, *4 n.5 (N.D. Ill. June 24, 2024) (taking judicial notice of EEOC charge and IDHR records attached to motion to dismiss briefing). In addition, the factual allegations—which cover TPC's prior role in Plaintiffs' hiring and compensation; TPC's present role in the Tribune's operations; Alden's involvement in board matters, compensation decisions, and collective bargaining; and the experience and salaries of Plaintiffs and their male and/or white colleagues—are generally consistent with and elaborate on the allegations in the complaint.

Certainly, filing an amended complaint with these new facts would have been more efficient than cobbling together allegations across multiple sources. But because Defendants had an opportunity to address these additional facts in their replies, they suffer no prejudice by the Court considering these allegations in deciding the present

motions. And the Court finds that ordering an amended complaint with the additional facts would have only served to further delay the case. Accordingly, the Court analyzes Defendants' arguments for dismissal in view of the facts alleged in both the complaint and declaration. To the extent the declaration contains arguments and not facts, it is ignored.

II.     Exhaustion

Defendants argue that Plaintiffs failed to exhaust their administrative remedies. Before bringing a Title VII or IHRA claim, a plaintiff must first exhaust administrative remedies by filing charges with the EEOC and receiving a right to sue letter. *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019). "After doing so, a plaintiff filing suit in federal court may bring only those claims that were included in her EEOC charge, or that are like or reasonably related to the allegations of the charge and growing out of such allegations." *Id.* (cleaned up). "This standard is a liberal one and is satisfied if there is a reasonable relationship between the allegations in the charge and those in the complaint, and the claim in the complaint could reasonably be expected to be discovered in the course of the EEOC's investigation." *McHale v. McDonough*, 41 F.4th 866, 870 (7th Cir. 2022) (quoting *Teal v. Potter*, 559 F.3d 687, 692 (7th Cir. 2009)). To satisfy the first prong, claims must, at a minimum, "describe the same conduct and implicate the same individuals." *Id.* (citing *Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 501 (7th Cir. 1994)). The second prong "requires speculation as to what the EEOC might or might not

6

discover in the course of an investigation" based on the content of the EEOC complaint and other written allegations from administrative proceedings. *Id.*

Defendants contend that Plaintiffs have not exhausted their class claims. Administrative charges must put defendants "on notice of the plaintiffs' intention to file a lawsuit containing allegations of class-wide discrimination." *Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 128 (7th Cir. 1989). Here, the administrative charges provide adequate notice of class claims. The allegations in the charges speak to Plaintiffs' individual circumstances, but they do not stop there. The charges also describe discrimination against female and African American employees in general. *E.g.*, Decl. at p. 79 ¶ 8 ("The Chicago Tribune maintains a systemic and company-wide pay gap, wherein women and African American employees are compensated significantly less than their male and non-African American colleagues."); *id.* at p. 79 ¶ 9 ("[Defendants] maintain a series of policies and practices that creates and maintains a wage gap between male and female employees and between African American and non-African American employees."). Further, the charges tie the pay gap to broader company programs. *E.g.*, *id.* at p. 80 ¶ 10 ("Overall, the Residency program and MetPro were a source of 'cheap labor' that the Chicago Tribune used to depress the salaries of otherwise highly qualified female and/or non-white journalists."). In other words, the collective language in the charges "signal[s] the existence of a broader class of plaintiffs." *Cf. Vasich v. City of Chi.*, No. 11-cv-4843, 2013 WL 80372, at *5 (N.D. Ill. Jan. 7, 2013) (Charges "did not suffice to give the City notice of class-wide claims [when they] spoke only of discrimination against the

charging woman herself, using the pronouns 'I' and 'my,' exclusively. Not one of them referred to any other applicants or to discrimination against women in general.").

Defendants insist that these allegations are insufficient because they sit under the heading, "Facts Common to All Claimants," where "claimants" refers only to the seven Plaintiffs. That highly technical reading is inconsistent with the "liberal" standard to be applied. *See McHale*, 41 F.4th at 870. Defendants, in turn, urge the Court not to afford Plaintiffs a "liberal" reading because Plaintiffs' counsel drafted both the charges and the complaint. But even if the Court were to apply a stricter standard, the class-based language used throughout the charges negates any suggestion that the allegations are limited to the seven plaintiffs who filed them.

Alden separately argues that the charges and the complaint do not allege the same conduct as to Alden. Yet both the charges and the complaint allege that "Respondents" (defined as including Alden) pay female and African American employees less than their male and/or non-African American colleagues. The charges and the complaint both describe how "Respondents" (a term defined as including Alden): (1) rely on diversity outreach programs like MetPro and the Residency program and community or local suburban newspapers to hire and recruit female and African American journalists at lower salaries; (2) rely on prior salary history to set pay; and (3) foster a culture of secrecy around compensation by prohibiting employees from discussing pay. Compl. ¶¶ 10–11; Decl. at pp. 16–17 ¶¶ 10–12. Further, both the charges and the complaint claim Alden and the other Defendants perpetuated the disparity caused by these practices. *Compare* Decl. at p. 15 ¶ 8 ("There remains a lack

of transparency, inadequate standards and controls, and inadequate opportunities for redress, which perpetuate pay disparity[.]"), ¶ 9 ("Respondents maintain a series of policies and practices that . . . maintain a wage gap.") *with* Compl. ¶ 35 (Alden "is aware of the unlawful pay disparities, but failed to and continues to fail to develop compensation policies which rely on permissible criteria for wage disparities."). Because the conduct alleged by the charges and the complaint match, Plaintiffs exhausted their administrative remedies as to Alden.

## III.  Employer Status

TPC and Alden also seek dismissal of all claims for failure to adequately plead they are employers as required by the relevant statutes.

### i.  Title VII and IHRA

To bring a Title VII claim, Plaintiffs must plead the existence of an employer-employee relationship. *Bronson v. Ann & Robert H. Lurie Children's Hosp. of Chi.*, 69 F.4th 437, 448 (7th Cir. 2023) (citation omitted). An indirect or *de facto* employer can be liable under Title VII "provided it had sufficient control over the terms and conditions of that individual's work." *Id*. To determine whether a defendant qualifies as an indirect or *de facto* employer, courts use a multi-factor test "focused on the 'economic realities' of the parties' relationship and control over the plaintiff's work." *Id.* The relevant factors (the "*Knight* factors") include:

> (1) the extent of the employer's control and supervision over the employee; (2) the kind of occupation and nature of skill required, including whether skills were acquired on the job; (3) the employer's responsibility for the costs of operation; (4) the method and form of payment and benefits; and (5) the length of the job commitment.

*Id.* at 448–49 (citing *Knight v. United Farm Bureau Mut. Ins. Co.*, 950 F.2d 377, 378–79 (7th Cir. 1991)). The first factor is the most important and depends on the entity's ability to hire, fire, and direct the employee's work. *Id.* at 449; *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 361 (7th Cir. 2016). Illinois courts apply a nearly identical test to determine if an employment relationship exists under the IHRA. *Frey v. Coleman*, 903 F.3d 671, 679 (7th Cir. 2018).

Alternatively, "[e]ven if a putative employer does not exercise control over the plaintiff as a general matter, it may qualify as [an indirect or] *de facto* employer if it exercises control over the specific aspects of his employment related to the subject of his suit." *Id.* at 450 (citations omitted). While the *Knight* factors "focus[] on whom the plaintiff works for in real terms," the specific-control theory "looks at who was responsible for the particular work conditions that gave rise to her claim of discrimination, irrespective of who hired her, paid her, and controlled the substance of her day-to-day work." *Id.* at 452.

Determining whether an entity qualifies as an indirect or *de facto* employer often cannot be resolved on a motion to dismiss because it may involve "a fact-intensive inquiry that typically requires further development through discovery." *Nor v. Alrashid*, No. 20 C 7470, 2022 WL 815542, at *6 (N.D. Ill. Mar. 17, 2022). "At the pleading stage, a plaintiff need only allege sufficient facts to support a theory that the defendant exercised enough control over her to qualify as [an indirect or *de facto*] employer." *Claussen v. Muchowski*, No. 12-cv-05316, 2022 WL 4465931, at *4 (N.D. Ill. Sep. 26, 2022).

10

Here, Plaintiffs fail to plausibly allege that TPC and Alden exercised control over them as a general matter. At most, Plaintiffs allege that TPC was and Alden is "ultimately in charge of the centralized group overseeing [the Tribune's] operations." Compl. ¶¶ 34, 35. They do not allege that TPC or Alden had the ability to hire them or fire them. To the contrary, the complaint suggests that the Tribune was responsible for hiring Plaintiffs. *E.g.*, *id.* ¶¶ 56, 61, 80, 81 (stating that "the Tribune hired" Buckley and Kujawa); *id.* ¶ 89 (stating that "the Tribune offered" Williams-Harris position at the newspaper after her two-year term was set to expire); *id.* ¶ 102 (stating that "the Tribune recruited and hired" Gutowski); *see also id.* ¶¶ 24, 26–29, 31 (describing Plaintiffs' hire dates, which were all before Alden purchased TPC). The complaint does not say anything about TPC or Alden's ability to fire Plaintiffs. Also absent from the complaint are any facts about how TPC and Alden exercised control over Plaintiffs' work as journalists. There is no suggestion that TPC or Alden directed their work assignments, set their hours, reviewed their performance, or otherwise supervised their work. Nor is this information that Plaintiffs would need discovery to learn. *See Budzyn v. KFC Corp. et al.*, No. 21 C 4152, 2022 WL 952746, at *2 (N.D. Ill. Mar. 30, 2022) (server and dishwasher at KFC franchise did not adequately plead that parent corporation was her employer where she asserted corporation "employed, managed, supervised, and controlled" her but did not allege any factual details as to how it did so); *Claussen*, 2022 WL 4465931, at *4 (office manager for insurance agent did not plausibly allege that insurance company was her joint employer where she

did not allege that the company hired or could fire her, dictated her assignments, or controlled her work performance, or evaluations).

The declaration's proposed allegations about TPC's touchpoints with administrative systems at the Tribune do not move the needle. The declaration says that the Tribune's Vice President of Human Resources is employed by TPC; that TPC maintains the Workday portal, which contains payroll data; and that TPC is the "employer on the handbook governing Plaintiffs' employment." Decl. ¶¶ 35, 36, 39. But those allegations still do not permit the reasonable inference that those entities controlled Plaintiffs' day-to-day work. *See Shah v. Littelfuse Inc.*, No. 12-cv-6845, 2013 WL 1828926, at *4 (N.D. Ill. Apr. 29, 2013) (dismissing for failure to plead defendant was joint employer where complaint, at most, suggested the defendant "maintained some administrative involvement in" the plaintiff's employment). The Court cannot conclude, based on the facts alleged, that TPC and Alden exercised control over Plaintiffs as a general matter.

However, Plaintiffs allege sufficient facts to plausibly suggest that TPC and Alden controlled the specific circumstances giving rise to their claims. The gist of Plaintiffs' Title VII and IHRA claims is that they and members of the putative classes were paid less than male and/or white employees. And Plaintiffs allege that TPC and Alden controlled their salaries. Specifically, Plaintiffs assert that TPC had and Alden has the "authority to set bonuses, raises, and compensation." Compl. ¶¶ 34, 35. The declaration adds that TPC exercised that authority when the company "offered starting salaries" to Plaintiffs and "refused equity pay adjustments and raises." Decl.

¶ 33. Plaintiffs also state that TPC is still a member of the collective bargaining team responsible for negotiating Plaintiffs' wages.[3] *Id.* ¶ 38. Plaintiffs assert that Alden has had "final approval" over all salary decisions since 2021, has participated in union negotiations and represented that it has "control and approval" over any salary determinations, and has "refused any equity-based pay raises" during collective bargaining. *Id.* ¶ 53.

Accepting these factual allegations as true and drawing all reasonable inferences in Plaintiffs' favor, these facts plausibly suggest TPC and Alden have exercised control over the circumstances giving rise to their pay disparity claims. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1088–89 (7th Cir. 2008) (plaintiff claiming sex-based pay disparity plausibly alleged defendant was her employer under Title VII where she alleged that defendant "controlled her salary—the basis of her alleged adverse employment action"). Discovery may reveal that TPC and Alden have not exercised control over Plaintiffs' or putative class members' compensation as alleged. But at this stage, Plaintiffs set forth enough factual allegations to plausibly suggest TPC and Alden qualify as indirect or *de facto* employers and evade dismissal of their Title VII and IHRA claims on that basis.

ii. EPA and IEPA

---

[3] TPC separately argues that the Title VII and IHRA claims are barred by the 300-day statute of limitations because Plaintiffs allege in their complaint that TPC "was a joint employer . . . during the time it owned the Chicago Tribune" which ended in 2021. *See* ECF No. 1, ¶¶ 31, 34. But the fact that TPC continues to negotiate Plaintiffs' wage scales as part of the collective bargaining team indicates its ongoing role in determining compensation. Based on those allegations, the Court can reasonably infer that TPC was an indirect or *de facto* employer within the statute of limitations.

The EPA and IEPA prohibit employers from "discriminat[ing] . . . between employees on the basis of sex by paying [unequal] wages." 29 U.S.C. § 206(d)(1); 820 I.L.C.S. 112/10(a). EPA and IEPA claims are analyzed in the same way. *See, e.g.*, *Karlo v. St. Augustine Coll.*, No. 20-CV-5084, 2021 WL 2156438, at *2 (N.D. Ill. May 27, 2021). Generally, to be a joint employer under the statutes, the entity "must exercise control over the working conditions of the employee, although the ultimate determination will vary depending on the specific facts of each case." *Moldenhauer v. Tazewell-Pekin Consol. Commc'ns Ctr.,* 536 F.3d 640, 644 (7th Cir. 2008) (citing *Reyes v. Remington Hybrid Seed Co.*, 495 F.3d 403, 408 (7th Cir. 2007), *as amended* (Aug. 30, 2007)). Courts examine the "totality of the plaintiff's employment situation." *Id.* Relevant factors include whether the potential employer "(1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of payments, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* But that list is not exhaustive. *Id.* Further, in *Tamayo*, the Seventh Circuit held that the plaintiff plausibly alleged the defendant was her employer under *both* Title VII and the EPA by alleging that the defendant exercised control over the specific aspects of her employment related to the subject of her suit. For the reasons previously stated, the Court finds that Plaintiffs plausibly allege that TPC and Alden controlled the circumstances giving rise to their pay disparity claims so as to adequately plead TPC and Alden were employers under the EPA and IEPA.

IV.    Plausibility of Equal Pay Act Claims

14

Defendants argue that Plaintiffs fail to state EPA and IEPA claims because they do not plausibly allege that comparators who were paid more performed equal work. To state a claim under the EPA or IEPA, Plaintiffs must plead: "(1) higher wages were paid to a male [or white] employee, (2) for equal work requiring substantially similar skill, effort and responsibilities, and (3) the work was performed under similar working conditions." *Jaburek v. Foxx*, 813 F.3d 626, 632 (7th Cir. 2016) (citation omitted). In determining whether two jobs require "equal work," courts ask whether the jobs "have a common core of tasks, i.e., whether a significant portion of the two jobs is identical. Once a plaintiff establishes a common core of tasks, we ask whether any additional tasks make the jobs substantially different." *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 230 (7th Cir. 2017) (citation omitted). To make this determination, courts "look[] to the actual job duties performed by each employee, not to his or her description or title." *Id.* (citation omitted); *see also Markel v. Bd. of Regents of Univ. of Wis. Sys.*, 276 F.3d 906, 913 (7th Cir. 2002) ("The Plaintiff would have to show that the jobs compared are substantially equal, based upon actual job performance and content—not job titles, classifications or descriptions.").

There are four categories of relevant allegations. First, Plaintiffs allege they were paid less than male and/or white employees "for substantially equal or similar work performed under similar working conditions when viewed as a composite of skill, effort, and responsibility." Compl. ¶¶ 61, 65, 78, 86, 95, 101. Second, Plaintiffs allege they were paid less than their "co-workers," "peers," or "colleagues." *E.g.*, *id.* ¶¶ 49, 57, 61, 67, 77, 85, 101. Third, Plaintiffs describe their *own* work

accomplishments, accolades, and experience, and in certain cases compare the amount of time spent in their role with those who were paid more. *E.g. id.* ¶¶ 68–70 (describing Wescott's experience); *id.* ¶ 49 ("[Gutowski's] male co-worker, with almost 20 years' less experience, is still making nearly $10,000 more than [her].").  And fourth, Plaintiffs state they were paid less than those who share their job classification or title, i.e., "reporter," "editor," or "photojournalist." *See, e.g., id.* ¶ 76 ("Wescott, a photojournalist who was part of a Pulitzer Prize winning team, is paid $10,000 less than a male photojournalist with half her experience."); Decl. ¶ 44 ("[Buckley] is making $62,000, compared to a white male reporter with less experience performing substantially similar job duties under similar conditions is making $85,000."); *see also id.* ¶¶ 45–50.

Even drawing all reasonable inferences in Plaintiffs' favor, such allegations fall short of the plausibility standard. To start, allegations that Plaintiffs were paid less "for substantially equal or similar work performed under similar working conditions when viewed as a composite of skill, effort, and responsibility" are threadbare recitals of the elements that cannot withstand a motion to dismiss. *Twombly*, 550 U.S. at 555. Further, the Court cannot reasonably infer that the alleged comparators shared a common core of tasks with Plaintiffs based solely on the characterization of those individuals as "co-workers," "peers," or "colleagues." Those labels say nothing about the *content* of the comparators' jobs and how their work stacks up to Plaintiffs' work.

Allegations that Plaintiffs were paid less than those with the same job categories or titles, without any factual detail about the responsibilities of employees with those job categories or titles, has the same flaw. *Jirek v. AstraZeneca Pharms. LP*, No. 21 C 6929, 2023 WL 415547, at *4 (N.D. Ill. Jan. 25, 2023) ("[H]aving a 'similar position' or the 'same job classification' does not, in itself mean that all employees holding that position performed 'equal work,' which is what the statute requires."). For example, Buckley alleges that she has worked as a Resident, a "general assignment reporter," and a "Senior Reporter" at the Tribune and is paid less than a "white male reporter." Compl. ¶¶ 23, 44, 57, 58. But there are no allegations about what the work of a reporter at the Tribune generally entails or the content and conditions of that comparator's work—all facts which Plaintiffs should know without discovery. Without those facts, the Court cannot reasonably infer that the comparator's work is substantially equal to Buckley's work as a Resident, general assignment reporter, or Senior Reporter. Indeed, the allegations about Buckley's different titles, along with the allegation defining "Reporter" classes as including those in "writing and reporting positions," *id.* ¶ 6(1), suggest that two employees classified as "reporters" may do substantially different work. *See Jirek*, 2023 WL 415547, at *4 (dismissing EPA claims where Plaintiffs' "high-level description" of sales employees' responsibilities did not allow the Court to ascertain Plaintiffs' or their comparators' "actual job duties"); *Karlo*, 2021 WL 2156438, at *4 (dismissing EPA and IEPA claims where it was unclear from the complaint whether "unnamed 'male counterpoints' . . . were faculty members, how much they were paid, what their

work entailed, or under what conditions they worked"). Merely alleging that others with the same job classification or title were paid more does not nudge the EPA and IEPA claims from possible to plausible. On that basis, the EPA and IEPA claims are dismissed.

Defendants urge the Court to dismiss these claims with prejudice because Plaintiffs had a chance to remedy any deficiencies in the declaration they filed in response to the motions to dismiss. However, the Seventh Circuit has counseled that "[u]nless it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss." *See Barry Aviation Inc. v. Land O'Lakes Municipal Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004). Because the Court believes Plaintiffs may be able to fill in the blanks in their complaint with additional facts, the Court dismisses the EPA and IEPA claims without prejudice.

V.    Motion to Strike

Plaintiffs bring sex- and race-based IEPA claims on behalf of putative classes of all female and all African American employees who worked as (1) reporters, (2) editors, and (3) photojournalists. Defendants ask the Court to strike the allegations of putative subclasses for photojournalists and editors.

"At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A); *see also* Fed. R. Civ. P. 23(d)(1)(D) (permitting courts to "issue orders that . . . require that the pleadings be amended to eliminate

allegations about representation of absent persons and that the action proceed accordingly"). A motion to strike class allegations is an "appropriate device to determine whether the case will proceed as a class action" when a plaintiff's allegations are "facially and inherently deficient." *Robinson v. Lake Ventures LLC*, No. 22 CV 6451, 2023 WL 5720873, at *9 (N.D. Ill. Sept. 5, 2023) (citations omitted). However, if "the dispute is factual and discovery is needed to determine whether a class should be certified," then a motion to strike class allegations is premature. *Murdock-Alexander v. TempsNow Employ't*, No. 16 C 5182, 2016 WL 6833961, at *4 (N.D. Ill. Nov. 21, 2016) (citations omitted).

Here, Defendants' motion to strike is premature. Defendants first argue that Plaintiffs will be unable to meet Rule 23(a)'s numerosity requirement as to the photojournalist subclasses. *See* Fed. R. Civ. P. 23(a)(1) (requiring that "the class is so numerous that joinder of all members is impracticable"). However, Plaintiffs allege that the members of the photojournalist subclasses "are so numerous that joinder of all members would be unfeasible and impracticable" and that membership in the classes exceeds 50 individuals. Compl. ¶ 41. Defendants urge the Court consider a declaration from TPC's Vice President of Human Resources, who attests that Tribune's records show that since May 2019, the Tribune has employed a total of 12 photographers, two of whom are Plaintiffs. R. 24 ¶ 5. But many courts in this district have declined to look beyond the pleadings in considering a motion to strike. *See, e.g. Jones v. BRG Sports, Inc.*, No. 18 C 7250, 2019 WL 3554374, at *4 (N.D. Ill. Aug. 1, 2019) ("[T]he motion to strike analysis should—at least where the motion is filed at

this early a stage of the litigation—be limited to the face of the pleadings and documents incorporated by inclusion or reference, as would be appropriate for an analogous motion to dismiss under Rule 12(b)(6)."); *see also Murdock-Alexander*, 2016 WL 6833961, at *5. The Court finds that approach to be the appropriate one here, where no discovery has taken place.

To be sure, some of the allegations in the complaint suggest that membership in the subclasses may fall below the alleged 50, or even the commonly used benchmark of 40. *E.g.*, *id.* ¶ 64 (James is "the only African American photojournalist currently at the Tribune" and "[t]here has only a handful of African American photojournalists hired by the newspaper since 1998"); *id.* ¶ 72 (Wescott works "[i]n a newsroom with few female photographers"). But that does not mean the complaint is facially or inherently deficient. "The key to the numerosity inquiry under Rule 23(a)(1) is not the number of class members alone but the practicability of joinder." *Anderson v. Weinert Enters., Inc.*, 986 F.3d 773, 777 (7th Cir. 2021). It "requires an evaluation of the nature of the action, the size of the individual claims, and the location of the members of the class[.]" *Id.* Plaintiffs may still be able to show, with the benefit of discovery, that joinder of the photojournalists is impracticable based on members' location or claims.

Defendants also argue that Plaintiffs fail to allege sufficient facts to support aggregating those with the job title of "editor." Plaintiffs define the membership of this putative subclass as: "Editors includes news, features, opinion, photo, sports, and audience work groups, and includes positions titled Deputy Senior Content Editor

and Content Editor." Compl. ¶ 6. But this argument intersects with Defendants' challenge to the plausibility of the EPA and IEPA claims, namely the lack of factual allegations about the duties of editors. Because the Court is giving Plaintiffs a chance to remedy that deficiency through amendment, the Court denies as moot this motion to strike. If Defendants believe the allegations in the amended complaint as to the editor subclasses remain insufficient, they are free to raise this issue again in their responsive pleading.

## Conclusion

For the foregoing reasons, the Court grants in part and denies in part Defendants' motions to dismiss and denies the motion to strike. The EPA and IEPA claims are dismissed without prejudice. Plaintiffs shall file an amended complaint by March 11, 2025. The amended complaint should include the allegations proposed in the declaration attached to Plaintiffs' opposition brief and any other factual allegations they believe will remedy the deficiencies identified herein and support their claims.[4]

ENTERED:

Honorable Thomas M. Durkin
United States District Judge

Dated: February 11, 2025

---

[4] In light of the similar names of several of the Defendants (i.e., Chicago Tribune LLC and Tribune Publishing Company) along with the newspaper (i.e., Chicago Tribune), the Court encourages Plaintiffs to clearly and carefully define each Defendant by name and use those names consistently throughout the amended pleading. Additionally, no more declarations with proposed allegations will be considered.